**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Herlinda Maria De La Rosa,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-17-02022-PHX-DGC<br><br>**ORDER** |

Plaintiff Herlinda De La Rosa seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied her disability insurance benefits and supplemental security income under §§ 216(i) and 223(d) of the Social Security Act. Because the administrative law judge's ("ALJ") decision is based on reversible legal error, the Court will vacate the Commissioner's decision and remand for further proceedings.

**I.  Background.**

Plaintiff is a 51 year old female who previously worked as an accounting assistant, administrative assistant, accounts receivable clerk, and billing and collections clerk. A.R. 30-31, 42. Plaintiff applied for disability insurance benefits and supplemental security income on March 20, 2014, alleging disability beginning on November 2, 2012. A.R. 21. On July 8, 2016, Plaintiff testified at a hearing before the ALJ. *Id.* A vocational expert also testified. *Id.* On November 8, 2016, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 21-32.

This became the Commissioner's final decision when the Appeals Council affirmed the ALJ's decision on April 25, 2017. A.R. 3-6.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* "The burden is on the party claiming error to demonstrate not only the error, but also that it affected [her] substantial rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears

the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) she is not currently working, (2) she has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") prevents her performance of any past relevant work. If the claimant meets her burden through step three, the Commissioner must find her disabled. If the inquiry proceeds to step four and the claimant shows that she is incapable of performing past relevant work, the Commissioner must show in the fifth step that the claimant is capable of other work suitable for her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017, and has not engaged in substantial gainful activity since November 2, 2012. A.R. 24. At step two, the ALJ found that Plaintiff has the following severe impairments: status-post cerebral vascular accident ("CVA"), systematic lupus erythematosus ("lupus"), hypothyroidism, Sjogren's syndrome, and degenerative disc disease of the lumbar spine. A.R. 24. The ALJ acknowledged that the record contained evidence of depressive disorder, but found that this is not a severe impairment. A.R. 24-26. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. A.R. 26-27. At step four, the ALJ found that Plaintiff has the RFC to perform sedentary work with some additional limitations and that Plaintiff is able to perform her past relevant work. A.R. 27-31.

**IV. Analysis.**

Plaintiff makes three arguments: (1) the ALJ erred by rejecting her treating physician's opinions, (2) the ALJ improperly discredited Plaintiff's symptom testimony, and (3) the RFC fails to reflect Plaintiff's mental and visual impairments and is not supported by substantial evidence. Doc. 12 at 10-22.

### A. Treating Physician Opinion.

Plaintiff argues that the ALJ improperly weighed the medical opinions of treating physician Scott Smith. Doc. 12 at 12-14.

#### 1. Legal Standard.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(1), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(1)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings," *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another

doctor, it can be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation marks and citation omitted). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation marks and citation omitted).

### 2. Dr. Smith.

Dr. Smith is a treating physician who issued four opinions regarding Plaintiff's ability to work. A.R. 2719-26, 2739-41, 3299-3302. In May 2014, Dr. Smith opined that Plaintiff could not work due to the residual effects of a CVA, her cognitive dysfunction, and vision impairment. A.R. 2724. In September 2014, Dr. Smith opined that Plaintiff's vision impairment prevented her from working. A.R. 2739-40. In March 2016, Dr. Smith issued two opinions that Plaintiff could not work due to her vision, cognition, memory, balance, and motor-function impairments. A.R. 3299-3302. The ALJ did not recite each specific opinion, but chose instead to provide a summary:

> Scott Smith, M.D., a treating physician, submitted opinions of the claimant's limitations. Dr. Scott reported her inability to return to her past work along with never crawling, kneeling, climbing, squatting, or reaching above shoulder level. He further opined she would miss more than six days of work per month due to her impairments.

A.R. 30 (citations omitted).

The ALJ assigned "little weight" to Dr. Smith's opinions, finding that (1) other medical records contradict his opinions, and (2) Dr. Smith's own records contradict his opinions. *Id.* Dr. Smith's opinions are inconsistent with the opinions of two consulting examiners: Dr. John Fahlberg, who opined that Plaintiff has the RFC to perform past relevant work, and Dr. Clarence Ballard, who opined that Plaintiff is able perform a range

of medium work despite her impairments. *See* A.R. 67-76, 78-89. Therefore, the Court must determine whether the ALJ's reasons for affording little weight to Dr. Smith's opinions are specific, legitimate, and supported by substantial evidence. *Lester*, 81 F.3d at 830-31.[1]

### a. The ALJ's First Reason.

The ALJ stated that Dr. Smith's opinions were inconsistent with other medical records showing no major lupus episodes. *See* A.R. 30. In support, the ALJ cited a single treatment note from July 2014 in which a different physician noted "no major lupus flares" but "some fatigue and some joint pain." A.R. 2963. Plaintiff contends that this reason fails to identify a specific opinion and describe why it is contradicted by the record. Doc. 12 at 12. Plaintiff further argues that the July 2014 treatment note, read as a whole, is consistent with Dr. Smith's opinions. *Id.* at 13. Defendant counters with additional argumentation – not reflected in the ALJ decision – that the July 2014 treatment note supports the ALJ's conclusion. Doc. 16 at 4.

The Court agrees with Plaintiff. The ALJ's first reason falls well short of the "detailed and thorough" analysis the Ninth Circuit requires. *Revels*, 874 F.3d at 654. Citation to one treatment note does not significantly undermine Dr. Smith's four opinions that Plaintiff is unable to work. The ALJ has not provided specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

### b. The ALJ's Second Reason.

The ALJ concluded that Dr. Smith's own records contradict his opinions. *See* A.R. 30. This conclusion clearly was flawed. The ALJ attributed to Dr. Smith an opinion that Plaintiff could not crawl, kneel, climb, squat, or reach above shoulder level (*see* A.R. 30 (citing A.R. 2725)), but Dr. Smith did not give such an opinion. The page

---

[1] Plaintiff contends that the Court must apply the more demanding "clear and convincing" standard because the ALJ also gave little weight to the contradictory opinions of Drs. Fahlberg and Ballard. Doc. 12 at 11. Plaintiff cites no authority for the proposition that assigning little weight to an opinion alters its nature as contradictory medical evidence. *Id.* In any event, the appropriate standard has no effect on this decision, as the Court concludes that the ALJ's decision fails to meet the lesser "specific and legitimate" standard.

cited by the ALJ for the alleged opinion is a document prepared by Plaintiff and her employer that describes the physical requirements of her job. A.R. 2725-26. Her employer did not require her to crawl, kneel, climb, squat, or reach above shoulder level. A.R. 2725. Dr. Smith identified this document as one prepared by Plaintiff (*see* A.R. 2724), and the ALJ acknowledged at the hearing that this document was not Dr. Smith's medical opinion (A.R. 62).

The ALJ discounted this supposed opinion on the basis of a single treatment note from July 2012 in which Dr. Smith noted Plaintiff's "amazing recovery from left partial hemiplegia," participation in Pilates classes, and ability to walk well in the light of day. A.R. 3048. But because Dr. Smith had not given the opinion the ALJ was addressing, this basis for discrediting his opinions was neither legitimate nor supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

### 3. Whether Error was Harmless.

Even if the ALJ committed error in improperly weighing a medical opinion, that error will be harmless if the Court can "conclude from the record that the ALJ would have reached the same result absent the error." *Molina*, 674 F.3d at 1115; *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). The ALJ erroneously gave little weight to the opinion of a treating physician who determined that Plaintiff has substantial limitations that prevent her from working. And the vocational expert testified that accepting Dr. Smith's opined limitations would require a finding of disability. A.R. 61. The Court cannot conclude that the ALJ would have reached the same conclusions had she properly evaluated Dr. Smith's opinions. The ALJ's error was not harmless.

### B. Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Revels*, 874 F.3d at 655 (citing *Garrison*, 759 F.3d at 1014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity

of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.*

The ALJ summarized Plaintiff's symptom testimony:

> The claimant alleges her CVA, lupus, hypothyroidism, Sjogren's syndrome, and degenerative disc disease of the lumbar spine prevent[] her from performing substantial gainful activity. Specifically she noted symptoms including loss of vision, chronic fatigue, muscle tightness, decreased sensation, cognitive impairment, and poor memory. These symptoms impair her ability to lift, stand, squat, bend, kneel, walk, climb, understand, concentrate, and remember. At the hearing, she testified as to an ability to stand 15 to 20 minutes and walk up to two blocks. Left-handed weakness allegedly prevents her from typing and she retains the ability to lift only three pounds. In order to remember to take her medications she set phone reminders and relies on a domestic worker to clean her home.

A.R. 27 (internal citations omitted). The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms fail to correspond with the explanations and evidence cited in this decision." A.R. 29-30.

Plaintiff first contends that the ALJ erred by providing a "general discussion of the medical evidence, untied to any analysis of *specific* reported symptoms." Doc. 12 at 16 (emphasis in original) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015)). The Court does not agree. The ALJ gave five reasons to discredit Plaintiff's symptom testimony (A.R. 28-29), and Plaintiff specifically responds to four of them (Doc. 12 at 16-20). The Court will address the ALJ's reasons.

### 1. Neurological Examinations.

The ALJ concluded that Plaintiff's alleged memory and concentration impairments are undermined by "neurological examination[s] [that] showed intact recent and remote memory along with good insight and judgment." A.R. 28. Plaintiff contends

that the four examinations the ALJ cited do not support her conclusion. Doc. 12 at 17. Specifically, Plaintiff emphasizes that two of the examinations are from 2010, approximately two years before the alleged onset of her disability. *Id.* And the two examinations from 2015, Plaintiff argues, do not reflect the record as a whole. *Id.*

The Court does not agree. The ALJ found that Plaintiff recovered from her CVA in 2009 and returned to work for several years. A.R. 28. The ALJ cited records from 2010 and 2015 to show that "the objective medical records fail to support a worsening of [Plaintiff's] impairments after her aforementioned recovery." A.R. 28. Medical records from after 2009 but before the alleged onset of disability support this conclusion. To the extent Plaintiff contends that these four citations do not reflect the record as a whole, she does not identify any evidence that supports a different conclusion.

### 2. Diagnostic Testing.

The ALJ concluded that Plaintiff recovered from her 2009 CVA. A.R. 28. But Plaintiff reported that her cognition, vision, and physical strength progressively worsened in the years that followed. *Id.* The ALJ found that diagnostic testing contradicts these allegations. *Id.* The Ninth Circuit has cautioned that a claimant need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Revels*, 874 F.3d at 655 (quoting *Garrison*, 759 F.3d at 1014).

Plaintiff characterizes this reason as narrowly finding that her allegations of dizziness are contradicted by a single physical examination that showed otherwise. Doc. 12 at 17. This misreads the ALJ's decision. The ALJ discredited her allegations of deteriorating work performance, vision, and strength because "diagnostic testing failed to show any worsening of her conditions" after her initial recovery from the CVA. A.R. 28. In support, the ALJ cited three diagnostic tests, one of which was a March 2016 physical examination that reflected "normal strength, range of motion, gait," and an ability to stand and rapidly arise from a seated position. *Id.* The ALJ reasoned that this test directly contradicts her assertions of "dizziness when rising quickly and falling into walls when ambulating." *Id.*

Plaintiff's citation of other evidence to substantiate the opposite conclusion is unpersuasive. Three of Plaintiff's four citations to the record also show signs of improvement in Plaintiff's balance. Doc. 12 at 17 (citing A.R. 2825 (notes improvement in November 2012), 3023 (notes in January 2013 that medicine caused significant improvement in vertigo), 3319-20 (notes in December 2015 that balance and vertigo are worse with stress, but better with medication)). The fourth pre-dates the March 2016 physical examination and is insufficient, standing alone, to negate the ALJ's reasoning. Doc. 12 at 17 (citing A.R. 3209-10 (Plaintiff had some balance and gait issues in April 2013)). Plaintiff's narrow argument does not establish error.

### 3. Self-Reports of Condition.

The ALJ concluded that evidence of effective treatment and "feeling good" tends to discredit Plaintiff's allegations of severe and debilitating pain. A.R. 29. Plaintiff does not challenge this reason (*see* Doc. 12 at 16-20), and the Court finds it to be sufficiently specific, clear, and convincing to reject her testimony.

### 4. Minimal and Effective Vision Treatment.

The ALJ concluded that minimal and effective vision treatment discredited Plaintiff's allegations of a significant visual impairment. A.R. 29. In some circumstances, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Plaintiff contends that this reason is unsupported by the records the ALJ cited. Doc. 12 at 18.

To find that Plaintiff's conservative vision treatment was "successful," the ALJ relied on (1) a November 2012 treatment note that reflects eye redness and a prescription for reading glasses (A.R. 3031); (2) a January 2013 treatment note that reflects Plaintiff's passing of a Department of Motor Vehicles test and ability to "drive safely" (A.R. 3021); (3) a September 2015 prescription for eye drops to treat dryness (A.R. 3308), (4) a September 2015 prescription for contact lenses for night driving (*id.*), and (5) a March 2016 eye examination that found 20/25 corrected vision in her right eye and 20/50

corrected vision in her left eye, which had corneal abrasions (A.R. 29 (citing A.R. 3304)). A.R. 29. But much of the cited evidence reflects continued vision problems as well. A.R. 3021 (left eye problems interfere with right eye's vision in January 2013), 3031 (difficulty maintaining vision over long periods of time in November 2012).

The Court concludes that these records do not support the ALJ's conclusion. Although they show that Plaintiff received conservative treatment in November 2012 and September 2015, they do not support a finding that Plaintiff's treatment was successful. Plaintiff's passing of a DMV vision examination around January 2013 does not address the effectiveness of her treatment, especially in light of a finding of abnormal corrected vision in March 2016.

Even if these records had supported her conclusion, the ALJ did not explain how they are inconsistent with Plaintiff's alleged visual limitations. She simply concluded that "[t]hese medical records show a successful treatment of [Plaintiff's] eyes and tend to contradict her alleged visual limitations. Accordingly, the undersigned found no visual limitations." A.R. 29. This lack of a specific, clear, or convincing explanation was error.

### 5. Daily Activities.

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the activities contradict the claimed limitations, or the claimant "spend[s] a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added); *see also Reddick v. Chater*, 157 F.3d 715, 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's

credibility.").

The ALJ concluded that Plaintiff's daily activities contradict her alleged symptoms and support an ability to perform work at the sedentary level. A.R. 29. The ALJ emphasized Plaintiff's ability to (1) "take care of her personal hygiene, prepare simple meals and do laundry, dust, drive, and grocery shop"; (2) attend her children's baseball games, eat out, and travel to California; (3) care for her roommate's children, and (4) exercise "on a regular basis walking up to one mile per day on a treadmill, do[] Pilates, and work[] out with a personal trainer." A.R. 29. Plaintiff makes three arguments: (1) the ALJ lacked evidence on the nature of the help Plaintiff provided to the children; (2) the ALJ neglected to comment on the frequency, duration, or physical requirements of any of the activities; and (3) the ALJ failed to show that the activities are at odds with the severity of Plaintiff's symptoms. Doc. 12 at 18-19.

The Court agrees with Plaintiff. The ALJ did not find that Plaintiff spent a substantial part of her day engaged in these activities. Nor did she explain how they are inconsistent with Plaintiff's claimed limitations, but simply concluded that Plaintiff's "activities of daily living illustrate[] a person more able bodied than alleged." A.R. 29. This lack of explanation was error.

### 6. Whether Error was Harmless.

The ALJ erroneously relied on Plaintiff's vision treatment and daily activities to discredit alleged visual and physical impairments. The ALJ's RFC reflects no visual impairment, and the ALJ provided no alternative reason to discredit Plaintiff's alleged visual impairment. What is more, the daily activity analysis appears to be central to the RFC's physical limitations. The Court accordingly cannot conclude that the ALJ would have reached the same conclusions had she properly evaluated Plaintiff's symptom testimony. The ALJ's error was not harmless.

### C. Residual Functional Capacity.

The ALJ concluded that Plaintiff can perform sedentary work with the following additional limitations: "lifting and/or carrying ten pounds occasionally and less than ten

pounds frequently. She can frequently climb ramps and stairs, balance, kneel, crouch, and crawl, but only occasionally climb ladders, ropes, or scaffolds. She cannot work around hazards such as moving machinery or unprotected heights." A.R. 27.

### 1. Mental and Visual Impairments.

Plaintiff contends that the RFC fails to account for her "difficultly with concentration, memory, focus, or vision deficits." Doc. 12 at 22. Plaintiff cites medical records tending to show that Plaintiff suffers from these impairments. *Id.* And Plaintiff contends that the "ALJ erred by failing to consider the medical records and [Plaintiff's] symptom testimony regarding [Plaintiff's] mental and visual impairments as required by the agency's own rules." *Id.*

In determining the RFC, the ALJ must consider the combined effects of all impairments, both severe and non-severe. 42 U.S.C. § 423(d)(2)(B); *see also Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The ALJ acknowledged Plaintiff's alleged cognitive impairments in her RFC analysis. A.R. 27. But the ALJ decided not to include them in the RFC because (1) Plaintiff underwent successful neurological rehabilitation after her CVA, and (2) allegations of subsequent cognitive deterioration are contradicted by "neurological examination[s] show[ing] intact recent and remote memory along with good insight and judgment." A.R. 28. For reasons explained above, the Court concludes that this finding is supported by substantial evidence. *See supra* Part IV(B)(1).

The ALJ also acknowledged Plaintiff's alleged visual impairments in her RFC analysis. A.R. 27. For reasons explained above, the Court concludes that the ALJ's finding of no visual limitations was unsupported by substantial evidence. *See supra* Part IV(B)(4).

### 2. Substantial Evidence.

Plaintiff describes the ALJ's decision as a bare recitation of the medical evidence without any analysis as to why she chose the specific limitations in the RFC. Doc. 12 at 20-21. For this reason, Plaintiff argues, the ALJ's RFC determination is untethered to specific, substantial evidence in the record. *Id.* Defendant counters that the ALJ's multi-

page analysis considered the medical record, Plaintiff's symptom testimony, and the medical opinion evidence. Doc. 16 at 9.

Plaintiff mischaracterizes the ALJ's analysis. Over approximately four pages, the ALJ described Plaintiff's symptom testimony, the medical records, and medical opinions. A.R. 27-30. After describing relevant evidence, the ALJ identified the effect of that evidence on the resulting RFC. A.R. 28 ("the undersigned limited the claimant to sedentary work with no exposure to moving machinery or unprotected heights"), 29 (medical records "correspond with an ability to perform sedentary work with frequent climbing ramps and stairs, balancing, kneeling, crouching, and crawling"), 29 (successful vision treatment requires "no visual limitations" in the RFC), 29 (daily "activity level suggests an ability to work at the sedentary exertional level"). The Court therefore rejects Plaintiff's broad argument. The Court nonetheless agrees that the RFC analysis is based on legal error insofar as it relies on the deficient reasoning described above. *See supra* Part IV(B)(4-5).[2]

### 3. Whether Error was Harmless.

The ALJ erroneously relied on Plaintiff's vision treatment and daily activities to discredit alleged visual and physical impairments. *See supra* Part IV(B)(4-5). For reasons explained above, these errors had an apparent effect on the resulting RFC. *See supra* Part IV(B)(6). The Court cannot conclude that the ALJ would have reached the same RFC determination had she properly evaluated Plaintiff's symptom testimony. The ALJ's error was not harmless.

## V. Scope of Remand.

The ALJ erred in her consideration of Dr. Smith's medical opinion and Plaintiff's symptom testimony. Plaintiff contends that, crediting Dr. Smith's opinions and her symptom testimony as true, the Court must remand for an award of benefits. Doc. 12 at 22-24. Defendant counters that the appropriate remedy is a remand for further

---

[2] Because the Court finds legal error in the ALJ's RFC determination, it need not consider Plaintiff's separate argument that the ALJ erred by assigning little weight to each medical opinion. Doc. 12 at 20.

- 14 -

proceedings. Doc. 16 at 11-12.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry. *Id.* The Ninth Circuit recently explained:

> The three-part analysis . . . is known as the "credit-as-true" rule. First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step in the process. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

Applying this three-part test, the Court concludes that it must remand to the Commissioner for further proceedings. First, the ALJ erred by discrediting Dr. Smith's medical opinion and Plaintiff's symptom testimony. Second, outstanding issues must be resolved before a disability determination can be made. The ALJ erroneously rejected Plaintiff's alleged visual impairments, and the vocational expert offered no opinion on the effect of visual impairments on Plaintiff's ability to work. A.R. 60-64. Although the vocational expert testified on hypothetical physical limitations (*id.*), the ALJ's improper consideration of Plaintiff's daily physical activities undermines the Court's confidence in the physical limitations identified in the RFC. For that reason, the Court does not reach the third step and will remand to the Commissioner for further proceedings.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 9th day of May, 2018.

David G. Campbell
United States District Judge